

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Jacob K. Javits Federal Building*
*26 Federal Plaza, 37th Floor*
*New York, New York 10278*

June 10, 2025

**BY ECF**
Hon. Robyn F. Tarnofsky
United States Magistrate Judge
Southern District of New York
Daniel Patrick Moynihan Courthouse
500 Pearl Street
New York, NY 10007

    Re:    *United States v. Valkar Singh*, No. 24 Mag. 4316

Dear Judge Tarnofsky:

    The Government writes in opposition to defendant Valkar Singh's motion to modify his bail conditions to permit international travel, to do away with his home confinement, and to relocate to within a short drive of an international border.

    On December 11, 2024, Valkar Singh drove a Maserati from Canada over the U.S. border with an invalid, expired Canadian passport. From the border, Singh drove to the Saint Regis Mohawk Reservation at Akwesasne—a sovereign territory whose lands have crossable borders with both the United States and Canada, *see Pyke v. Cuomo*, No. 92 Cv. 554, 1995 WL 694624, at *3 (S.D.N.Y. Nov. 22, 1995)—and picked up nearly 60 kilograms of pills that, as he later told law enforcement officers, he knew were illegal. Singh was arrested later that evening when he delivered those six industrial-sized buckets of pills—more than 100,000 of them—and he was charged with federal drug crimes. Laboratory results later confirmed that Singh had been trafficking isotonitazene: a new and dangerous synthetic opioid that is more potent than fentanyl, less responsive to overdose-prevention treatments like naloxone, and harder to identify through even state-of-the-art drug-detection techniques. *See, e.g.*, J. Bendjilali-Sabiani et al., *Isotonitazene, a synthetic opioid from an emerging family: The nitazenes*, 79 THERAPIES 655-58 (2024) (describing these troubling features and the identification of isotonitazene in several overdose toxicology reports). As a result, Singh faces a significant sentence. Apart from any potential enhancements or reductions, Singh's quantity of isotonitazenes alone—the nearly 60 kilograms of extremely dangerous synthetic opioids he drove from Canada to pick up and deliver to New York City—sets a base offense level of 38, the highest base offense level in the Sentencing Guidelines's Drug Quantity Table.

    At Singh's presentment, the parties negotiated a bail package that won the Government's consent due in large part to Singh's commitment to reside with family in Carteret, New Jersey— nearly 400 miles and a six-hour drive from the Canadian land border he crossed without a valid passport to traffic drugs.

In early January, Singh moved for a bail modification that would permit him to relocate with Canadian family members to a short-term rental property a short drive from the Canadian border. (*See* Dkt. 7). His proposed modified bail package included his family paying for an Airbnb that was listed as renting for more than $4,300 a month; Singh's papers represented that his family could rent this property "throughout the pendency of this case." (*See id.* at 1; *see also* Dkt. 9 (reply in further support of application for bail modification) at 1 (representing that family could retain this monthly lease "as long as this case may go on")). This Court conditionally granted Singh's first application for a bail modification over the Government's objection. (*See* Dkts. 8, 10). Singh then withdrew his application after the Government sought a review of the Court's conditional release order in Part I, telling this Court that the requested relocation was "no longer necessary, since he and his family are exploring housing options in . . . SDNY/EDNY/DNJ." (Dkt. 12.)

Singh now seeks, among other things, termination of his home confinement condition and permission to relocate to Rochester, New York, to "facilitate his family's ability to visit him" and because a rental apartment there is purportedly "more affordable than the housing options he has identified in the New Jersey and New York City area." (*See* Dkt. 23 at 2). He also seeks permission to travel to Canada for more than two weeks for his daughter's wedding. (*Id.* at 1).

Singh's application should be denied. *First*, permitting Singh to travel to Canada poses an intolerable risk that he will not return to the United States to appear in his federal criminal case. To begin with, Singh's charges carry a presumption of flight. *See* 18 U.S.C. 3142(e)(3)(A). That means Singh bears the burden of producing evidence that his proposed modified conditions will reasonably assure against the risk of non-appearance. *See, e.g.*, *United States v. Kandasamy*, No. 06 Cr. 616 (RJD), 2008 WL 2660610, at *1 (E.D.N.Y. July 3, 2008). But Singh's circumstances aggravate, not mitigate, his presumed flight risk. He is a Canadian citizen with few, if any, meaningful ties to the United States. The overwhelming evidence of Singh's guilt makes it exceedingly likely that his return to the United States will culminate in a lengthy term in a foreign prison. *See United States v. Zhang*, 55 F.4th 141, 151 (2d Cir. 2022) (courts considering bail should weigh that "[t]he prospect of a severe sentence can create a strong incentive for a defendant to flee and thereby avoid that sentence"). And should Singh choose not to voluntarily return to face these sanctions, the Government would have to divert resources to extradite him from Canada—a lengthy process that, even when ultimately successful, imposes costs and delays justice. *See, e.g.*, *United States v. Breen*, 243 F.3d 591, 593 (2d Cir. 2001) (noting, in a narcotics distribution case, "the difficulty in extraditing [a defendant] from his native Canada").

*Second*, there is no basis to terminate Singh's condition of home confinement. The condition permits a wide range of activity for a defendant whose serious opioid-trafficking charges carry a presumption of detention. He may host family visitors, and leave home to do anything from meet with his lawyer to attend religious services, get medical attention, or undertake educational activities. Singh gives no compelling basis to do away with his home confinement beyond arguing that he has complied with the condition for its first five months. But that is the point of the condition. Singh's argument is tantamount to doing away with an umbrella because it has kept someone dry. What is more, Singh told this Court several months ago—when making his first, similar bail-modification application—that there was no need to do away with his condition of home detention. As Singh then framed it, his purpose of obtaining moral support from family members was perfectly consistent with home confinement. (*See* Dkt. 9 at 1–2 ("Mr.

Singh is not requesting any substantive change to his release conditions, which require him to be on home confinement. He is merely asking to be permitted . . . to live with his mother and adult son, whose moral support will be critical to helping him navigate the stress of his first ever criminal case.")). Singh has identified no changed circumstances that render the once-tolerable condition intolerable.

*Third*, the Court should deny Singh's renewed application to relocate much closer to the Canadian border. Just a few months ago, Singh represented to the Court that his family could secure a house that rented for more than $4,300 per month "as long as this case may go on." (Dkt. 9 at 1). Now, Singh claims to be unable to find accommodations anywhere in the geographically expansive and socioeconomically diverse Southern District of New York (or the Eastern Disrict of New York, or the District of New Jersey) at a price that reasonably compares to a particular apartment he says he has found in Rochester.[1] The Court has reason to be skeptical of Singh's rationale. For one thing, it is not at all clear why it takes his Ontario-based family "more than nine hours" to travel to visit him. (A direct flight from Toronto to any of New York City's three major airports takes little more than 90 minutes.) For another thing, Singh—who, given the "presumption of flight" occasioned by his drug-trafficking charges, bears the burden of production, *see Kandasamy*, 2008 WL 2660610, at *1—has given the Court no evidence of his family's means becoming meaningfully more limited just a few months after they asserted an ability to maintain a $4,300-a-month rental for the pendency of his case, nor any evidence to support his implausible claim that his housing budget cannot reasonably be met closer to the site of his pending criminal case. What information Singh has provided cannot disturb the presumption of flight: he proposes to live in a city from which a person can drive to the Canadian border in under 90 minutes. *See, e.g.*, https://maps.app.goo.gl/QpfKGGYCMBVdk66s6. Even if the Court keeps Singh on home detention enforced by location monitoring—as it should—such a short trip to the border would give Pretrial Services hardly any time to see an alert of a discarded monitor, much less respond to one.

---

[1] The Court should deny Singh's motion to relocate, but if it is granted, the Court should at least require the submission of documentation substantiating that Singh has access to the rental property for the pendency of his pretrial release.

For the reasons stated above, the Court should deny Singh's application for bail modifications and maintain the current conditions of pretrial release.

Respectfully submitted,

JAY CLAYTON
United States Attorney

by: _____
Justin Horton
William C. Kinder
Assistant United States Attorneys
(212) 637-2276 / -2394

cc: Michael Arthus, Esq.
Pretrial Services